1  RICHARD C. LINSTROM
   Vice President and General Counsel
2  Nevada Bar No. 005407
   UNIVERSITY OF NEVADA, LAS VEGAS
3  4505 Maryland Parkway, Box 451085
   Las Vegas, Nevada  89154-1085
4  Telephone: (702) 895-5185
   Facsimile: (702) 895-5299
5  *Attorney for Defendant*
   *Susan M. Carrasco*
6

7              **UNITED STATES DISTRICT COURT**

8                   **DISTRICT OF NEVADA**

9

10  MEGAN KRAINSKI,                         CASE NO.  2:08-cv-00417-JCM-GWF

11              Plaintiff,

         vs.
12                                          **MOTION FOR SANCTIONS**

13  THE STATE OF NEVADA ex rel. BOARD
    OF REGENTS OF NEVADA SYSTEM OF
14  HIGHER EDUCATION, on behalf of THE
    UNIVERSITY    OF    NEVADA,    LAS
15  VEGAS; a Political Subdivision of the State
    of Nevada: REBECCA MILLS, individually
16  and as Vice President for Student Life of the
    University    of    Nevada,    Las    Vegas;
17  RICHARD CLARK, individually  and  as
    Director of Student Conduct and Residential
18  Life of the University of Nevada, Las Vegas;
    PHILLIP  BURNS,  individually   and   as
19  Senior  Student  Conduct  Officer  of  the
    University    of    Nevada.    Las    Vegas;
20  NANNETTE JIMENEZ, individually and as
    a Student Conduct Officer of the University
21  of  Nevada,  Las  Vegas;  SUSAN  M.
    CARRASCO, individually and as Assistant
22  General  Counsel  of  the  University  of
    Nevada,   Las   Vegas;   TYREE   PINI,
23  individually and as Assistant Residential Life
    Coordinator;   LESLIE   WALLENFELDT,
24  individually and as Assistant Residential Life
    Coordinator of the University of Nevada, Las
25  Vegas; OFFICR BRETT GOFF, P#302,
    individually and as a police officer with the
26  University  of  Nevada,  Las  Vegas  Police
    Department;  OFFICER  L.  TRAMPOSCH,
27  P#312, individually and as a police officer
    with  the  University  of  Nevada,  Las  Vegas
28  Police Department; OFFICER J. CULVER,
    P#309. individually and as a police officer

with the University of Nevada. Las Vegas
Police Department; KENYA POLEE,
individually; DOES I - XX, inclusive,

Defendants.

Defendant Susan M. Carrasco, Assistant General Counsel, University of Nevada. Las Vegas, by and through counsel. Richard C. Linstrom, Vice President and General Counsel, University of Nevada, Las Vegas, hereby moves to dismiss this matter and for other sanctions, pursuant to Rule 11[1] and the Court's inherent power to control its docket in response to abusive and harassing litigation tactics.[2]  This Motion is based upon the attached Memorandum of Points and Authorities, as well as other papers, pleadings and documents on file herein.

DATED: June 9. 2008.

/s/ RICHARD C. LINSTROM
RICHARD C. LINSTROM
Vice President and General Counsel
Nevada Bar No. 005407
UNIVERSITY OF NEVADA. LAS VEGAS
4505 Maryland Parkway. Box 451085
Las Vegas, Nevada 89154-1085
*Attorney for Defendant Susan M. Carrasco*

## MEMORANDUM OF POINTS AND AUTHORITIES

### SUMMARY

Defendant, Susan M. Carrasco, Assistant General Counsel. (hereinafter   "Carrasco"). through her undersigned counsel. files this Motion seeking sanctions against Plaintiff, pursuant to Rule 11 of the Federal Rules of Civil Procedure.   As set forth in the Memorandum of Law incorporated herein, Plaintiff has filed a Complaint which violates Rule 11(b) in three ways.  First it violates Rule 11(b)(1) because Plaintiff has filed the Complaint naming Ms. Carrasco. Assistant General Counsel, one of the attorneys for the University, for an improper purpose of engaging in abusive and harassing litigation tactics. Second, the Complaint, in its naming Ms. Carrasco.

---

[1] *The Rule 11 basis for this motion is primarily Plaintiff's abusive and harassing litigation tactics.   Although Defendants will touch upon the frivolousness of the claims, Defendants will, if necessary, file a subsequent motion to dismiss, for injunctive relief and/or a Rule 11 motion to fully address the obvious failure to state a claim, complete lack of good faith investigation, and immunity issues.*
[2] *A draft of this motion was sent to Mr.  Bach on May 16, 2008. Mr. Bach was served via receipt of copy on May 16, 2008.  See copy of ROC, attached as Exhibit A.*

attorney for the University, violates Rule 11(b)(2) because the claims are not warranted by existing law.  Third, the Complaint, in naming Ms. Carrasco, violates Rule 11(b)(3) because Plaintiff has no good faith evidentiary support for any of the claims alleged.

Plaintiff has chosen to name an inordinate amount of defendants in this litigation, basically naming anyone who happens to have had the misfortune of crossing paths with Plaintiff in any kind of way which she perceives as adverse to her.  Plaintiff has no factual support for bringing all of these defendants into court, particularly Ms. Carrasco.  Even if Plaintiff had any factual support for bringing all of these defendants into a lawsuit, Ms. Carrasco included, such efforts would only increase the costs and complexity of litigation with no corresponding rationale that such a tactic would enhance any recovery.

Plaintiff's tactic at naming all of the defendants, including Ms. Carrasco, should be recognized for what it is: a blatant attempt to intimidate NSHE employees, greatly increase the cost of litigation, and to retaliate through the court system. Plaintiff seeks to deliberately interfere with the defense of this case by naming a University attorney who advises and represents the University in legal matters.  As a result of these violations, Defendant Carrasco. seeks sanctions against Plaintiff and her attorney, including dismissal of the Complaint against Ms. Carrasco, with prejudice, an injunction enjoining Plaintiff from filing additional identical actions, and monetary sanctions including an award of attorneys' fees and expenses along with any additional amount that the Court deems necessary to deter repetition of the same improper conduct.

**ARGUMENT**

**I.    STANDARD FOR IMPOSING SANCTIONS**

Rule 11 authorizes an award of sanctions not only where a pleading or other filing is frivolous, but also if the pleading is "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 11(b)(1): *G.C. and K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096. 1109 (9th Cir. 2003).  The standard governing both the "improper purpose" and "frivolous" inquiries is objective. *Id.* "[T]he subjective intent of the movant to file a meritorious document is of no moment.  The standard is reasonableness.  The 'reasonable man' against which conduct is tested is a competent attorney

1   admitted to practice before the district court." *Id., quoting Zaldivar v. City of Los Angeles.*, 780
2   F.2d 823, 830 (9th Cir. 1986), *overruled on other grounds by, Cooter & Gell v. Hartmarx Corp.,*
3   496 U.S. 384, 110 S.Ct. 2447 (1990).

4   Further, the Court has broad based inherent power, typically applied when existing rules
5   are deemed deficient, to award sanctions where counsel has "'willfull[y] abuse[d] judicial process'
6   or otherwise conducted litigation in bad faith." *In re Itel Sec. Litig.,* 791 F.2d 672, 675 (1986),
7   *citing Toombs v. Leone,* 777 F.2d 465, 471 (9th Cir. 1985) (*quoting Roadway Express, Inc., v.*
8   *Piper,* 447 U.S. 752, 765, 100 S.Ct. 2455 (1980)); *Chambers v. NASCO Inc.,* 501 U.S. 32, 45-46,
9   111 S.Ct. 2123 (1991); *Schutts v. Bentley Nev. Corp.,* 966 F.Supp. 1549, 1552 (D.Nev. 1997);
10  *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 258-59, 95 S.Ct. 1612 (1975)
11  (*quoting F.D. Rich Co., Inc. v. U. S. ex rel. Indust. Lumber Co., Inc.,* 417 U.S. 116, 129, 94 S.Ct.
12  2157 (1974) (a court may impose sanctions against a party that has "acted in bad faith, vexatiously,
13  wantonly, or for oppressive reasons")).

14  Moreover, a finding of bad faith does not require that the legal and factual basis for the
15  action prove totally frivolous. *In re Itel,* 791 F.2d at 675. If a litigant is "substantially motivated
16  by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim" may still result in
17  sanctions. *Id., citing Lipsig v. Nat. Student Mktg. Corp.,* 663 F.2d 178, 182 (D.C. Cir. 1980)(per
18  curiam). Sanctions may be imposed against both the attorney and the client. *Schutts,* 966 F.Supp.
19  at 1560.

20
21  **II.   THE TACTIC OF FILING A LAWSUIT TO INCLUDE INSIDE DEFENSE
       COUNSEL MERITS A SEVERE REPRIMAND**

22  Plaintiff names Ms. Carrasco, an attorney for the University in the lawsuit along with every
23  single individual she had any contact with in the course of the student disciplinary process.
24  Plaintiff attempts to impede the defense of this case by naming the attorney who affords legal
25  counsel to the University for actions taken by Ms. Carrasco within the scope of her job, i.e.
26  affording legal advice and representation to the University and University officials. These tactics
27  are calculated to increase the cost of litigation and chill defendants from effectively defending this
28  case, without any sound factual or legal basis to do so.

### A. Actions Taken within the Course of Affording Legal Advice and Representation to the University and University Officials

The primary allegation against Ms. Carrasco involves her being listed in Plaintiff's First Cause of Action "Civil Rights Violation, Due Process Violation, Fifth and Fourteenth Amendment to the United States Constitution." *See* Plaintiff's Complaint. p.7 of 14, lines 1-3. Plaintiff articulates no factual basis for including Ms. Carrasco in this claim because Plaintiff merely adds Ms. Carrasco's name to the long list of defendants. Moreover, Plaintiff's General Factual Allegations do not articulate a basis for including Ms. Carrasco but again simply add her name to the long list of defendants. *See* Plaintiff's Complaint. pp.5-6, lines 20-28; 1-17. Oddly enough, Plaintiff acknowledges Ms. Carrasco's position with the University as an Assistant General Counsel at UNLV. *See* Plaintiff's Complaint, p.3 of 14, lines 17-19. Plaintiff is essentially suing Ms. Carrasco for providing legal advice and counsel to the University and University officials. Plaintiff's claims are so fantastical and factually unsupported, the allegations require no other comment than to identify them and let the Court assess whether the claims are brought in good faith.

> 31. Plaintiff was *eventually exonerated* of all criminal charges in January 2008, but not before she was arrested and incarcerated at the Clark County Detention Center, causing her to lose her liberty and causing severe psychological trauma and physical injury.

*See* Plaintiff's Complaint, p.5 of 14, lines 17-19 (*emphasis added*).

> 32. In October 2007. Defendants UNLV, MILLS, CLARK, BURNS, JIMENEZ and **CARRASCO** brought formal charges against Plaintiff for alleged violations of the University of Nevada, Las Vegas Student Conduct Code, including committing an act "that is in violation of federal, state, or local law," "Threatening, assaulting, or causing physical harm to...another;" and "attempting to violate any provision of the Student Conduct Code."

*See* Plaintiff's Complaint, p.5 of 14, lines 32.

> 33. Defendants UNLV, MILLS, CLARK, BURNS, JIMENEZ and **CARRASCO** failed to provide Plaintiff with proper notice of the formal hearing, violating her U.S. Constitutional Rights, the UNLV Student Conduct Code, and the Nevada System of Higher Education (NSHE) Code.

/ / / / /

34. Defendants UNLV. MILLS. CLARK, BURNS. JIMENEZ. and **CARRASCO** held a formal hearing on November 13, 2007, at which time they each failed to allow Plaintiff to be represented and/or assisted by her advisors, despite the explicit representation made by Defendants that Plaintiff would be allowed to be represented and/or assisted by said advisors, intentionally causing Plaintiff to be ineffective at representing herself at said hearing, all in violation of her U.S. Constitution Rights, the UNLV Student Conduct Code and the Nevada System of Higher Education (NSHE) Code.

*See* Plaintiff's Complaint, p.5 of 14, lines 1-7.

35. Despite the fact that no evidence was ever presented to support any of the allegations made against Plaintiff. Defendants UNLV, MILLS. CLARK. BURNS. JIMENEZ, and **CARRASCO** found Plaintiff to be "Responsible" of said charges, completely ignoring the evidence that exonerated Plaintiff, forever tarnishing the educational transcript and record of Plaintiff, as well as causing severe psychological and physical injuries. all in violation of her U.S. Constitutional Rights. the UNLV Student Conduct Code. and the Nevada System of Higher Education (NSHE) Code.

*See* Plaintiff's Complaint, p.5 of 14, lines 8-13.

36. Plaintiff failed a timely appeal of Defendants decision. However, Defendants UNLV, MILLS, CLARK, BURNS. JIMENEZ and **CARRASCO** again ignored the facts and dismissed the appeal, all in violation of her U.S. Constitutional Rights. the UNLV Student Conduct Code, and the Nevada System of Higher Education (NSHE) Code.

*See* Plaintiff's Complaint, p.5 of 14. lines 14-17.

37. Defendants have taken said actions against Plaintiff in retaliation for her making a complaint against a star athlete. and further retaliating against her for asserting her rights pursuant to the U.S Constitutional Rights, and the UNLV Student Conduct Code. and the Nevada System of Higher Education (NSHE) Code.

*See* Plaintiff's Complaint, p.5 of 14. lines 18-21.

The remaining claims in Plaintiff's Complaint do not specifically name Ms. Carrasco but rather refers to all of the Defendants generally.

Conduct by an attorney, acting in a professional capacity while representing a client does not constitute action under color of law for purposes of 42 U.S.C. Section 1983

In *West v. Adkins*, the United States Supreme Court succinctly outlined the requirements underlying a § 1983 claim. 487 U.S. 42. 48. 108 S.Ct. 2250 (1988). Relevant portions of *West* are provided below:

/ / / / /

> To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.

*Id.*

> The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power ‘possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043 (1941).

*Id.* at 49.

The United States Supreme Court had held that public defenders, prosecutors and court-appointed attorneys enjoy immunity against §1983 claims. *See Polk County v. Dodson,* 454 U.S. 312. 325, 102 S.Ct. 445 (1981) ("A public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); *Imbler v. Pachtman,* 424 U.S. 409, 424, 96 S.Ct. 984 (1976) (prosecutors enjoy "absolute immunity" from suit).

Some courts have concluded that public defenders or court-appointed attorneys are immune from suit under §1983 because they do not act "under color of law." *See Fine v. City of New York,* 529 F.2d 70 (2d Cir. 1975); *Lefcourt v. Legal Aid Soc'y,* 445 F.2d 1150. 1153-54 (2d Cir. 1971); *Harris v. Ward,* 418 F.Supp. 660 (S.D.N.Y.1976).

Other courts have held that even where state action is present in the activities of a public defender or court-appointed attorney, defense attorneys enjoy immunity against § 1983 claims. *See Robinson v. Bergstrom,* 579 F.2d 401, 404 (7th Cir. 1978) (per curiam); *Miller v. Barilla,* 549 F.2d 648 (9th Cir. 1977); *overruled on other grounds,* 700 F.2d 556, 559 (9th Cir.1983); *see also Gobel v. Maricopa County,* 867 F.2d 1201, 1203 (9th Cir.1989) ("[A]bsolute immunity is warranted when the prosecutor acts as an advocate in initiating a prosecution and presenting the state's case"); *Minns v. Paul,* 542 F.2d 899, 900 (4th Cir. 1976), *cert. denied,* 492 U.S. 1102, 97 S.Ct. 1127 (1977).

With regard to the absolute immunity from suit that prosecutors enjoy, the United States Supreme Court in *Imbler* reasoned:

/ / / / /

/ / / / /

> If a prosecutor had only a qualified immunity, the threat of a 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution. A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. *Cf Bradley v. Fisher*, 13 Wall., at 348, 20 L.Ed. 646; *Pierson v. Ray*, 386 U.S., at 554, 87 S.Ct. at 1217. Further, if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law.

424 U.S. at 424-25.

The Ninth Circuit has extended the protection against suit based on official capacity beyond prosecutors and defense attorneys and has broadly stated that "[s]ervices performed by an attorney in connection with a lawsuit do not constitute action under color of state law." *Sinclair v. Spatocco*, 452 F.2d 1213 (9th Cir. 1971).

*Goetz v. Windsor Cent. Sch. Dist.*, is a United States District Court case which is particularly analogous to this matter. 593 F.Supp. 526 (1984). In *Goetz*, the plaintiff, a "cleaner" at the Windsor Central School District, was arrested for theft after a series of thefts occurred at the school district offices and terminated from his employment without a hearing. *Id.* at 528. The plaintiff in *Goetz* commenced a § 1983 action against the school district and later amended his complaint to add John Hogan, the school's attorney, as a defendant. *Id.* Plaintiff alleged that Mr. Hogan "caused the plaintiff to be unlawfully terminated without a hearing even though Mr. Hogan knew or should have known that plaintiff had a right to a pre- or post-termination hearing" and that "Hogan advised the School District to direct its employees to remain silent regarding the reasons for Mr. Goetz's termination and later denied that he had in fact given such advice." *Id.* Mr. Hogan filed a motion to dismiss, which the District Court granted. *Id.* at 529. The *Goetz* court concluded that "[t]he conduct of an attorney acting in his professional capacity while representing his client does not constitute action under color of state law for the purposes of § 1983." *Id.* at 528. The court went on to state:

> The complaint here does no more than allege that Mr. Hogan gave his client professional legal advice. There is no allegation that defendant Hogan has a direct interest in this lawsuit or that he was acting in any capacity other than as a privately retained attorney. The conduct alleged in the complaint does not constitute action 'under color of state law.'  Absent such allegations the complaint does not state a claim on which relief may be granted and the complaint against Mr. Hogan must be dismissed.

*Id.* at 528-29.   The analysis in *Goetz* is both analogous and applicable in the instant case. Conceded in the Plaintiff's Complaint is the fact that Ms. Carrasco is an Assistant General Counsel, attorney, for the University of Nevada, Las Vegas.  There is nothing anywhere in the Complaint alleging that Ms. Carrasco has any direct interest in the disciplinary process, the lawsuit or that she was acting in any capacity other than as the University's legal counsel.  Accordingly, as in *Goetz*, the Complaint does not state a claim upon which relief may be granted and the Complaint against Ms. Carrasco, in her official capacity, must be dismissed.

Generally, courts have concluded that attorneys cannot be sued under § 1983 for acts performed while representing their clients.  *U.S. Gen., Inc. v. Schroeder*, 400 F.Supp. 713, 717 (E.D. Wis. 1975); *Kovacs v. Goodman*, 383 F.Supp. 507 (E.D. Pa. 1974).

The United States District Court for the District of Nevada discussed the issue of whether an attorney can be sued for acting in his or her professional capacity for acting on behalf of a client in *Tunheim v. Bowman*.  366 F.Supp. 1395 (D. Nev. 1973).  In *Tunheim*, the plaintiff sued attorney Jay Brown for acting on behalf of his client in a confession of judgment proceeding, alleging that Brown violated his civil rights "under color of law."  *Id.* at 1397-98.  The Court granted Brown's motion to dismiss.  *Id.*  The motion to dismiss on behalf of defendant Brown was predicated on the contention that an attorney at law, acting in a professional capacity on behalf of his clients in enforcing the clients' presumed rights, does not incur liability under the Civil Rights Statutes if another's civil rights are violated pursuant to his advice.  The Court concluded that the principle was properly applied in the *Tunheim* case.  The Court explained that in *Tunheim*, the defendant was an attorney who represented a client in private litigation allegedly pursued to judgment by unconstitutional means.  The Court reasoned that a private individual acting alone under an unconstitutional statute acts under "color of state law," but that the individual's attorney

1  representing him in litigation under that statute does not, based solely on that attorney-client

2  relation, act "under color of law." *Id.* at 1397.

3         Plaintiff's Complaint is deficient and fails as a matter of law. Ms. Carrasco is employed by

4  the University as an attorney, and in that position Ms. Carrasco affords legal counsel to the

5  University and University decision makers. Ms. Carrasco, as an attorney for the University, does

6  not act "under color of law" simply by affording legal advice and counsel to the University.

7  Accordingly, Ms. Carrasco should be dismissed as a defendant in this case.

8         **B.     Absolute Immunity**

9         The Ninth Circuit has established a rule of absolute immunity for government attorneys

10 with respect to conduct in connection with litigation, whether acting in a prosecutorial function or

11 not.

12        For example, in *Fry v. Melaragno*, the court considered the application of absolute

13 immunity to allegations of violations of constitutional rights by IRS attorneys and others in

14 connection with federal tax litigation. 939 F.2d 832 (9th Cir. 1991). The Ninth Circuit Court held
that the principles of *Butz v. Economou*, should be applied broadly:

15
16              We therefore agree with the Second Circuit, as it stated in *Barrett v.
                U. S.*, 798 F.2d 565, 572-73 (2nd Cir. 1986), that the principles
17              outlined in *Butz* should a fortiori apply to the government attorney's
                initiation and handling of civil litigation in a state or federal court.
18              Whether the government attorney is representing the plaintiff or the
                defendant, or is conducting a civil trial, criminal prosecution or an
19              agency hearing, absolute immunity is 'necessary to assure that . . .
                advocates . . . can perform their respective functions without
20              harassment or intimidation.' *Butz*, 438 U.S. at 1251, 98 S.Ct. at
                2913. Given the similarity of functions of government attorneys in
21              civil, criminal, and agency proceedings, and the numerous checks on
                abuses of authority inherent in the judicial process, we reiterate our
22              statement in *Flood v. Harrington*, 532 F.2d 1248 (9th Cir. 1976) that
                '[t]he reasons supporting the doctrine of absolute immunity apply
23              with equal force regardless of the nature of the underlying action.'
                532 F.2d at 1251 (citation omitted). If the government attorney is
24              performing acts 'intimately associated with the judicial phase' of the
                litigation, that attorney is entitled to absolute immunity from damage
                liability.

25 *Fry*, 939 F.2d at 837.

26        Similarly, absolute immunity has been applied to government attorneys in connection with

27 alleged violation of constitutional rights in connection with employment and civil rights related

28 litigation. In *Samuel v. Michaud*, the court held that allegations against the government attorneys

1    of misconduct with respect to witness testimony, documents submitted in the case, defamation and
2    an alleged conspiracy all stemmed from conduct during the case and therefore the doctrine of
3    absolute immunity was an appropriate shield. 980 F.Supp. 1381, 1401-02 (D. Idaho 1996). No
4    distinction should be drawn based on whether the attorneys represent the state or federal
5    governments. *See Mark v. Groff*, 521 F.2d 1376, 1380 (9th Cir. 1975) (finding that the doctrine of
6    immunity applies to federal and state officers).

7         Moreover, wholly apart from the immunity issue itself, the underlying consideration is
8    whether the plaintiff's tactic is appropriate and whether there is any legal precedent or good faith
9    basis for exposing defense teams to separate lawsuits for conduct during litigation. In fact, courts
10   have routinely rejected attempts by plaintiffs or defendants to establish independent liability on the
11   part of opposing counsel. For example, in *Lewis v. Am. Exploration Co.*, the plaintiff sought to
12   hold the opposing defense attorneys liable for litigation conduct, contending that the lawyers were
13   liable for fraud and conspiracy to defraud by providing false responses to discovery requests,
14   assisting their client in providing false deposition testimony and withholding properly requested
15   documents known to exist. 4 F.Supp.2d 673, 676-77 (S.D. Tex. 1998). The Court, citing Texas
16   law, categorically rejected the claims finding that as a matter of public policy, and whether
17   couched as fraud or conspiracy, the attorneys could not be held civilly liable, although they would,
18   of course, be subject to ethical sanctions. *Id.* In so finding, the Court cited a number of similar
19   holdings.

20        Again in *Parnell v. Smart*, the court held that attorneys for an automobile liability carrier
21   are responsible for protecting the insurer's interests and that it was "inconceivable" that they
22   would have some sort of duty to an adverse third party that asserted a claim against the insurer.
23   136 Cal. Rptr. 246, 248 (3rd Dist. App. 1977). Similarly, in *Rowell v. Transpacific Life Ins. Co.*,
24   the court rejected, on public policy grounds given the lawyer's duty of undivided loyalty to his
25   client, an attempt by defendants to cross-claim against plaintiff's attorneys based on allegations
26   that the attorneys' conduct had increased the damages to the client. 156 Cal. Rptr. 679, 681 (2nd
27   Dist. App. 1979). *See also Friedman v. Dozorc*, 312 N.W.2d 585, 591 (Mich. 1981) (creation of a
28   duty in favor of an adversary of the attorney's client would create an unacceptable conflict of

1  interest which would seriously hamper an attorney's effectiveness and interfere with the attorney-

2  client relationship); *Tappen v. Ager*, 599 F.2d 376, 378-79 (10th Cir. 1979) (attorney is not liable

3  to opposing party as paramount and exclusive duty is to client); *Garcia v. Rodey, Dickason, Sloan,*

4  *Akin & Robb, P.A.*, 750 P.2d 118, 122 (N.M. 1988) (attorneys not liable to civil rights plaintiff for

5  misrepresentation allegedly causing suit to be dismissed; as a matter of public policy, courts cannot

6  jeopardize the adversarial system by imposing a professional duty on an attorney toward an

7  adverse party).

8        In short, the strategy at issue is purely one of seeking to compromise the ability of Ms.

9  Carrasco to represent her client, the University, in the instant lawsuit.  For this reason, Ms.

10  Carrasco must be dismissed as a defendant.

11        **C.    Public Policy Considerations**

12        The Court should consider the public policy implications of allowing plaintiffs to sue

13  government attorneys who provide legal advice to government clients.  The University, like the

14  Nevada Attorney General's Office, has government attorneys who are employed to provide legal

15  advice to government boards and agencies.  If every plaintiff in every 42 U.S.C. Section 1983 civil

16  rights inmate lawsuit added the name of deputy attorney general, assigned to the Nevada

17  Department of Corrections, as a party to the suit, the entire system would certainly come to a halt.

18  The constant threat of liability would certainly have a chilling effect on the government attorneys'

19  enthusiasm to defend the suit.

20        Wholly apart from immunity issues, strong public policy considerations establish that a

21  lawyer's obligation is to his or her client, and absent unusual circumstances, a lawyer should not

22  be named in a lawsuit based on advice given to a client. For example, in *Schick v. Lerner*, plaintiff

23  sought to hold a psychologist's attorney liable on theories of conspiracy and inducement to breach

24  contract for advising the psychologist that he could release patient records of the plaintiff.  238

25  Cal. Rptr. 902 (2nd Dist. App. 1987).  The court rejected plaintiff's attempt to merely plead a

26  conclusory allegation of conspiracy against the attorney without any real factual basis for asserting

27  such a claim. *Id. at* 906-07.  Moreover, citing well-established case law, the court held that the

28  attorney did not owe a duty to the patient with respect to advice given his client based on strong

1   public policy. *Id. at* 909-09. *See e.g. Hussie v. Bressler*, 504 N.Y.S.2d 510 (N.Y. Sup. Ct. 1986)
2   (attorney not liable for interference with contract for advising clients not to pay brokers
3   commission): *Desire Narcotics Rehab. Ctr., Inc. v. White*, 732 So.2d 144 (La. App. 1999)
4   (attorneys representing corporation owed duty to corporation and could not be held liable to
5   employees if representation resulted in garnishment of employer's accounts); *McDonald v.*
6   *Stewart*, 182 N.W.2d 437 (Minn. 1970) (attorney not liable to third party based on allegations that
7   attorney made misrepresentations or coerced his client to withdraw from real estate transaction);
8   *Bayon v. Pettingill*, 77 So.2d 202 (La. App. 1955) (attorney who acted to stop payment on check at
9   direction of client was not liable to opposing party): *D. & C. Textile Corp. v. Rudin*. 246 N.Y.S.2d
10  813 (Sup. Ct. 1964) (where attorneys advised clients, who had contracted with plaintiff, either that
11  proposed transactions would not subject clients to liability or would avoid or terminate obligations,
12  attorneys were acting within professional privilege and were not liable for inducing breach of
13  contract: public policy requires that attorneys acting in their professional capacities be free to
14  advise clients without fear that they will be personally liable if advice later proves erroneous);
15  *Purdy v. Pacific Auto. Ins. Co.*, 203 Cal. Rptr. 524 (2nd Dist. App. 1984) (attorney does not have
16  power to compel client's acts and thus, lawyer is not responsible for failing to advise client to act
17  in a particular manner. as improper and damaging as that action may be); *Hovet v. Allstate Ins.*
18  *Co.*, 89 P.3d 69 (N.M. 2004) (defense attorneys may not be named as defendants in actions against
19  insurer for unfair claims settlement practices and attorneys do not owe a common law duty to
20  opposing parties); *S. Union Co. v. Sw. Gas Co.*. 165 F.Supp. 2d 1010 (D. Ariz. 2001) (attorney
21  cannot be liable for conspiracy unless the attorney acts out of self-interest that goes beyond the
22  agency relationship).
23          In *U.S. Gen. Inc., v. Shroeder*, the District Court for the Eastern District of Wisconsin
24  discussed public policy considerations with respect to attorney immunity from suit under § 1983:
25  / / / / /
26  / / / / /
27  / / / / /
28

> [I]t is clear that as a general proposition, attorneys are held to be
> immune from civil liability under 42 U.S.C. § 1983, even if their
> clients are not. The Court recognizes that this principle of immunity
> is grounded upon critical social considerations, for, if an attorney
> must work in constant fear of civil liability, it is the rights of the
> public that will suffer. Any such threat of liability visits an obvious
> chilling effect upon the attorney's enthusiasm to vigorously defend
> his client's position. The remedies guaranteed by the Civil Rights
> Act are not to be invoked so as to create a conflict between the
> attorney's duties to protect himself and to zealously represent his
> client. As a matter of public policy, the attorney must not be placed
> in a position where he is compelled to gamble on the outcome of a
> case, with his own personal liability hanging in the balance.

400 F.Supp.713, 717 (E.D. Wis. 1975) (internal citations omitted).

Accordingly, Ms. Carrasco must be dismissed from the instant suit as a defendant.

## III.   PLAINTIFF'S LEGAL CONTENTIONS DUE NOT HAVE MERIT AND THE FACTUAL CONTENTIONS LACK EVIDENTIARY SUPPORT

Rule 11(b)(2) prohibits unfounded legal claims or legal contentions. "Litigants have a duty to know the law before making legal arguments." Federal Rules of Civil Procedure, Rules and Commentary, Steven S. Gensler (2008), Practice Commentary, p.150, "The Duty to Research." In determining whether a legal error constitutes a Rule 11(b) violation, the court will factor in what a reasonable legal investigation would have objectively shown about whether the claim or defense was well-founded. *Holgate v. Baldwin*, 425 F.3d 671, 676, 62 Fed. R. Serv. 3d 1077 (9th Cir. 2005). Fed. R. Civ. P. 11(b)(3) prohibits unfounded fact allegations and contentions. *Bernal v. All Am. Inv. Realty, Inc.*, 479 F.Supp. 2d 1291, 1327-38, 67 Fed. R. Serv. 3d 924 (S.D. Fla. 2007) (lawyer had duty to further investigate client's assertion in light of circumstances as a whole).

In the instant case it is clear that Plaintiff's legal claims or contentions are unfounded and were made without a reasonable investigation. Plaintiff's Complaint alleges:

> 31. Plaintiff was eventually exonerated of all criminal charges in January 2008, but
> not before she was arrested and incarcerated at the Clark County Detention Center,
> causing her to lose her liberty and causing severe psychological trauma and
> physical injury.

*See* Plaintiff's Complaint, p.5 of 14, lines 17-19.

It is important to note that Plaintiffs asserts she was "eventually exonerated of all criminal charges." Exoneration is defined to mean "to relieve of responsibility, obligation or

1   hardship" or "to clear from accusation and blame." Merriam Webster's online dictionary,

2   http://www.merriam-webster.com/dictionary/Exonerate, last viewed May 14, 2008. Interestingly

3   enough, a certified copy of the Justice Court, Las Vegas Township minutes, does not indicate

4   that Plaintiff was exonerated. *See* Copy of Justice Court Minutes, attached as Exhibit B. Rather,

5   the minutes reflect that the criminal case involved a negotiation, wherein following negotiations,

6   the State motioned the Court to amend the complaint from a felony charge of Assault with a

7   Deadly Weapon to a misdemeanor Disorderly Conduct. *Id.* Plaintiff apparently had to agree to

8   attend impulse control counseling and provide proof of completion in order for the District

9   Attorney's office to reduce the felony charge to a misdemeanor disorderly conduct and upon

10  Plaintiff's successful completion of the requirements, the negotiation provided that the case

11  would be dismissed. This is not the same as being exonerated. The District Attorney's Office

12  did not dismiss the case and the Justice Court did not sua sponte dismiss and exonerate the

13  Plaintiff. The actual truth is that Plaintiff entered a plea deal that involved a reduced charge and

14  dismissal of the reduced charge upon her completion of the agreed upon requirements. Of

15  course, Plaintiff fails to include this information in the Complaint because it would prevent her

16  from being able to allege truthfully and in good faith that she was actually exonerated of the

17  criminal charges.

18  / / / / /

19  / / / / /

20  / / / / /

21  / / / / /

22  / / / / /

23  / / / / /

24  / / / / /

25  / / / / /

26  / / / / /

27  / / / / /

28  / / / / /

1                                      **CONCLUSION**

2         For the foregoing reasons, Defendant Carrasco respectfully request sanctions against

3 Plaintiff and her attorney as follows: (1) dismissal of the Complaint against Ms. Carrasco, with

4 prejudice; (2) an injunction enjoining Plaintiff from filing additional identical actions; (3)

5 monetary sanctions including an award of attorneys' fees and expenses along with any additional

6 amount that the Court deems necessary to deter repetition of the same improper conduct.

7         DATED: June 9, 2008.

8

9

                                       /S/ RICHARD C. LINSTROM
10                                      RICHARD C. LINSTROM
                                     Vice President and General Counsel
11                                      Nevada Bar No. 005407
                                     UNIVERSITY OF NEVADA, LAS VEGAS
12                                      4505 Maryland Parkway, Box 451085
                                     Las Vegas, Nevada 89154-1085
13                                      *Attorney for Defendant Susan M. Carrasco*

14

15

16                                 **CERTIFICATE OF SERVICE**

17         Pursuant to Fed. R. Civ. P. 5(b), and Section IV of District of Nevada Electronic Filing

18 Procedures, I certify that I am an employee of the University of Nevada, Las Vegas, and that the

19 following document, **MOTION FOR SANCTIONS**, was served via electronic service on the date

20 shown below:

21 Jason J. Bach, Esq.
THE BACH LAW FIRM, LLC
2620 Regatta Drive, Suite 102
22 Las Vegas, Nevada 89128

23

24         DATED:  June 9, 2008.

25

                                     /s/  Deborah Hart
26                                      Deborah Hart, an employee of
                                     Office of General Counsel
27                                      UNIVERSITY OF NEVADA, LAS VEGAS

28